IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

STACEY HERRELL,  )
 )
                       Plaintiff,  )
 )
     vs.  )
 )
LOCALS 302 & 612 OF THE INTER-  )
NATIONAL UNION OF OPERATING  )
ENGINEERS-EMPLOYERS CONSTRUCTION  )
INDUSTRY RETIREMENT FUND; and  )
WELFARE PENSION ADMINISTRATION  )
SERVICE, INC.,  )
 )    No. 3:13-cv-0055-HRH
                      Defendants.  )
_____)

O R D E R

Motion for Summary Judgment

Defendants move for summary judgment for failure to exhaust administrative remedies.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

Plaintiff is Stacey Herrell. Defendants are the Locals 302 and 612 of the International Union of Operating Engineers-Employers

---

[1]Docket Nos. 15 & 18.

[2]Docket No. 30.

-1-

Construction Industry Retirement Fund ("the Fund") and the Welfare Pension Administration Service, Inc. ("WPAS").

The Fund is a multiemployer, collectively bargained pension trust that qualifies as an ERISA "employment pension benefit plan." 29 U.S.C. § 1002(2)(A). The Fund is administered by a Board of Trustees. WPAS is a third-party administration firm that provides administrative services to the Fund's participants and beneficiaries.

The Fund's benefits are provided under the Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Plan. Plaintiff is a Plan participant.

In October 2009, plaintiff became disabled due to chronic neck and back pain. She began receiving short-term disability benefits under the Plan at that time.

In addition to short-term disability benefits, the Plan offers retirement disability benefits to participants who satisfy the service requirements and are found to be Totally and Permanently Disabled.[3] Retirement disability benefits are generally paid as a monthly life annuity, which is calculated by determining the participant's accrued benefit payable at normal retirement age (age 60) and then applying reduction factors to the accrued normal retirement benefit to take into account the participant's actual age

---

[3]Admin. Rec. at 74, Docket No. 14.

at retirement. Prior to January 1, 2010, a participant's normal retirement benefit was "reduced by 1/4 of 1 percent for each month that his Disability Retirement Date precedes his attainment of age fifty (50)."[4] Disability retirement benefits for eligible participants between the ages of 50 and 60 were fully subsidized so that participants received 100% of their accrued normal retirement benefits. After January 1, 2010, retirement disability benefits for eligible participants between the ages of 50 and 60 were reduced by a flat percentage.[5] For example, a 50-year old plan participant who was eligible for retirement disability benefits would receive 39.08% of her accrued normal retirement benefits; a 55-year old plan participant would receive 67.50%.[6]

On August 14, 2009, the Fund mailed notice to Plan participants regarding the "increase in the reduction factors used to determine the Disability Retirement benefit...."[7] The manager of WPAS avers that

> [b]etween August 14, 2009 and December 31, 2009, WPAS encouraged all applicants who inquired into the disability application process, to submit their applications prior to January 1, 2010, to ensure that if they were found to be disabled under the terms of the Plan[,] the benefit would be calculated using

---

[4]Admin. Rec. at 47, Docket No. 14.

[5]Admin. Rec. at 102, Docket No. 14.

[6]Id.

[7]Exhibit A, Declaration of Melinda Stokes, Docket No. 17.

-3-

>     the disability reduction factors in effect
>     prior to the amendment.[8]

Plaintiff avers that "[i]n November 2009, [she] was advised by other union members that disability retirement benefits were going to be reduced after January 1, 2010."[9] Plaintiff avers that she contacted WPAS to request a retirement disability application form in November 2009 but that WPAS advised that it would not send her a form because she had to wait to six months following the onset of her disability to file for those benefits.[10] Plaintiff avers that she called the WPAS office several more times in November and December 2009, requesting that WPAS send her the retirement disability application form because her union told her to file her claim despite what she had been told by WPAS.[11]

Plaintiff avers that she received the disability retirement application form "on or about January 5, 2010" and that she filled the form out and "sent [it] in [on] or around January 13, 2010."[12] Plaintiff avers that WPAS then sent the form back and told her "to send in [her] birth certificate and divorce papers with the

---

[8]Stokes Declaration at 2, ¶ 4, Docket No. 17.

[9]Affidavit of Stacey Herrell at 3, ¶ 9, Docket No. 31.

[10]Id. at ¶ 11. The Plan provides that "[d]isability will not be considered established unless it has continued for a period of not less than six consecutive months." Admin. Rec. at 74, Docket No. 14.

[11]Herrell Affidavit at 3-4, ¶¶ 13-14, Docket No. 31.

[12]Id. at 4, ¶¶ 15-16.

application," which she did.[13] Plaintiff avers that she then called WPAS in April 2010 to check on the status of her claim, at which time she was told that WPAS had no record of her claim.[14] Plaintiff avers that she sent a second application to WPAS sometime in June 2010.[15]

Melinda Stokes, the WPAS manager, avers that WPAS' records show that plaintiff first requested a disability retirement application form on April 30, 2010.[16] Stokes avers that WPAS sent plaintiff the application form that same day.[17] WPAS received plaintiff's completed application on September 7, 2010.[18]

On March 14, 2011, plaintiff's claim was denied. Plaintiff was advised that she could "request an appeal before the Board of Trustees" and that such a request "must be received in writing ... within 180 days after [the] receipt of" the March 14 letter.[19] Plaintiff was further advised that "[f]ollowing issuance of the written decision of the Trustees on an appeal, there is no further

---

[13]Id. at ¶¶ 17-18.

[14]Id. at ¶ 19.

[15]Id. at ¶ 21.

[16]Stokes Declaration at 2, ¶ 5, Docket No. 17.

[17]Id.

[18]Admin. Rec. at 150, Docket No. 14; see also, Stokes Declaration at 2, ¶ 5, Docket No. 17.

[19]March 14, 2011 Letter at 2, attached to Plaintiff's Notice of Filing Replacement Copy [etc.], Docket No. 34.

right of appeal to the Trustees. Instead, the claimant may bring a civil action under ERISA 502(a)."[20] Plaintiff was advised that she would have 180 days in which to bring a civil action after the Trustees issued their decision and that "[f]ailure to file a civil action within that 180-day period will operate as a waiver of and bar to the right of review, and the decision of the Trustees will be final and binding."[21]

The appeal procedures set out in the March 14 letter were consistent with the appeal procedures in the Plan. The Plan provides that

> [a]ny Participant or beneficiary who applies for benefits and is ruled ineligible, or who believes he did not receive the full amount of benefits to which he is entitled, or who is otherwise adversely affected by any action of the Trustees, shall have the right to appeal to and request that the Board of Trustees conduct a hearing in the matter. All such requests for appeal must be made in writing. In the case of a claim for Disability Retirement, the written notice of appeal must be received within 180 days after the notification of the denial of an application for benefits (or claim). ... Failure to file a written notice of appeal within the time period prescribed will operate as a complete waiver of and bar to the right to appeal, and the decision or other action of the Plan Administrator will be final.[22]

The Plan further provides that

---

[20]Id.

[21]Id.

[22]Admin. Rec. at 83, Docket No. 14.

> [f]ollowing issuance of the written decision of the Trustees on an appeal, there is no further right of appeal to the Trustees. Instead, the claimant may bring a civil action under ERISA § 502(a). Any action must be brought no later than 180 days after the date on which the Trustees' decision was issued. Failure to file a civil action within that 180-day period will operate as a waiver of and a bar to the right of review, and the decision of the Trustees will be final and binding. The question for consideration on review of the Trustees' decision is whether in the particular instance: (1) the Trustees were in error upon an issue of law; (2) the Trustees acted arbitrarily or capriciously in the exercise of their discretion; or (3) the Trustees' findings of fact were supported by substantial evidence.[23]

Plaintiff filed an appeal with the Trustees. On March 15, 2012, the Trustees advised plaintiff's counsel that it had decided to "approve [plaintiff's] Application for Disability Retirement Benefits, as it is clear from the evidence presented that [plaintiff] is totally and permanently disabled as defined under the Plan."[24] The Trustees advised plaintiff that if she was "dissatisfied with the written decision of the Trustees," she was "entitled to bring a civil action under ERISA § 502(a)...."[25]

On April 6, 2012, the Fund sent plaintiff a document entitled "Explanation of Forms of Payment and Election."[26] The document

---

[23]Admin. Rec. at 106, Docket No. 14.

[24]Admin. Rec. at 3, Docket No. 14.

[25]Id.

[26]Exhibit C at 1, Stokes Declaration, Docket No. 17.

advised plaintiff that her monthly disability retirement payment was estimated to be $560.31.[27]  Plaintiff believed that her monthly benefit was going to be approximately $2600.[28]

On June 18, 2012, Paula Jacobson, plaintiff's attorney,[29] sent an email to Jane Ewers, the Fund's co-counsel.[30]  Jacobson wrote that "[i]t appears that [plaintiff's] retirement benefit may be substantially less than she anticipated.  I am trying to understand the method by which the amount was calculated.... Can you give me the name of someone who can shed some light on this issue?"[31]  Ewers advised Jacobson to call Stokes at the "Trust Office."[32]

On June 18, 2012, Stokes sent Jacobson an email that read:

> Please find attached a copy of a 2009 Summary of Material Modification that was sent to all participants in 2009.  Please refer to page 3 of the SMM for information on the change to Disability benefits.  If [plaintiff] wishe[s] to proceed with her Disability retirement,

---

[27]Id. at 2.

[28]Herrell Affidavit at 6, ¶ 32, Docket No. 31.

[29]In her briefing, plaintiff contends that Jacobson did not continue to represent her after she received the favorable decision from the Trustees.  This contention is contrary to plaintiff's affidavit, in which she avers that "[u]pon further inquiry by my attorney, Jacobs[o]n, WPAS explained they were basing the payment on 'Fund' plan language that went into effect on January 1, 2010." Id at ¶ 28.

[30]Exhibit B, Declaration of Jane P. Ewers [etc.], Docket No. 16.

[31]Id. at 2.

[32]Id. at 1.

-8-

> please have her complete and return her Expla-
> nation of Forms of Payment and Election form
> along with a copy of the tax and bank forms.
> If you have any questions, please feel free to
> write or call me.[33]

Stokes avers that she spoke with Jacobson by phone on June 20, 2012 and "reiterated the basis for the calculation of [plaintiff's] disability retirement benefits."[34]

Plaintiff did not sign the election of benefits form. And, there is no evidence that plaintiff contacted WPAS regarding the amount of her benefits after June 20, 2012.

On March 21, 2013, plaintiff commenced this action, in which she alleges that she is entitled to receive disability retirement benefits under the Plan terms that existed prior to January 1, 2010. Plaintiff seeks "[a]n equitable order requiring [both defendants] to process and pay [her] disability retirement benefits under the terms of the 2009 [Plan], retroactive to October 25, 2009, and continuing, minus amounts previously paid to [her] in disability retirement benefits."[35] Alternatively, plaintiff seeks "an equitable order requiring [the Fund] to pay [her] disability benefits under the terms of the 2009 [Plan], retroactive to October 25, 2009, minus amounts previously paid to [her] in disability retirement

---

[33]Id.

[34]Stokes Declaration at 3, ¶ 10, Docket No. 17.

[35]Plaintiff's Complaint at 8, Docket No. 1.

-9-

benefits."[36] As yet another alternative, plaintiff seeks an "equitable order requiring WPAS to pay [her] disability retirement benefits under the terms of the 2009 [Plan], retroactive to October 25, 2009, minus amounts previously paid to [her] in disability retirement benefits."[37] As a final alternative, plaintiff requests "an award against WPAS in an amount sufficient to compensate [her] for the difference between retirement benefits she would have received under the terms of the 2009 [Plan], retroactive to October 25, 2009, minus amounts she will receive in disability retirement benefits under the terms of the 2010 [Plan]."[38]

Defendants now move for summary judgment dismissing plaintiff's complaint for failure to exhaust administrative remedies.

## Discussion

Although defendants move for summary judgment, "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment." Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). "Rather, failure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 368-69. In deciding such a motion, the court may

---

[36] Id. at 8-9.

[37] Id. at 9.

[38] Id.

consider matters outside the pleadings.  <u>Inlandboatmens Union of Pacific v. Dutra Group</u>, 279 F.3d 1075, 1083-84 (9th Cir. 2002).

"[A]s [a] general rule," an ERISA "claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court."  <u>Diaz v. United Agr. Employee Welfare Ben. Plan and Trust</u>, 50 F.3d 1478, 1483 (9th Cir. 1995).

> Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise.

<u>Id.</u>  "'Consequently the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [] as a matter of sound policy they should usually do so.'"  <u>Id.</u> (quoting <u>Amato v. Bernard</u>, 618 F.2d 559, 568 (9th Cir. 1980)).  "[T]he 'applicability <u>vel</u> <u>non</u> of exhaustion principles is a question of law....'" <u>Barboza v. Calif. Ass'n of Professional Firefighters</u>, 651 F.3d 1073, 1076 (9th Cir. 2011)(quoting <u>Diaz</u>, 50 F.3d at 1483).

Defendants argue that plaintiff failed to exhaust her administrative remedies as to the amount of her retirement disability benefits as she was required to do under the Plan's appeal procedures.  As set out above, the Plan provides that any participant "who believes [s]he did not receive the full amount of benefits to which [s]he is entitled" may file an appeal with the

-11-

Board of Trustees.[39]  If the participant is unhappy with the Trustees' decision, she then has 180 days in which to file a civil suit.[40]  These procedures are "the sole and exclusive procedure[s] available to a Participant or beneficiary who is dissatisfied with an eligibility determination, benefit award, or who is adversely affected by any action of the Trustees."[41]

There is no dispute that plaintiff failed to exhaust her administrative remedies as to the amount of her benefits award. After receiving the benefits election form which set forth the amount of her disability retirement benefits, plaintiff did not file an appeal with the Trustees nor did she file a lawsuit within 180 days.  Rather, plaintiff made some informal inquiries as to how her benefits had been calculated and then waited almost nine months to file this lawsuit.

There are, however, exceptions to the requirement that an ERISA claimant exhaust her administrative remedies prior to bringing a civil action.  "Inadequacy of remedy is [one] exception to the exhaustion requirement." Diaz, 50 F.3d at 1484.  Futility is also an exception.  Id. at 1488.  Thirdly, "where a plan fails to establish or follow 'reasonable' claims procedures as required by ERISA, 'a claimant shall be deemed to have exhausted the administra-

---

[39]Admin. Rec. at 83, Docket No. 14.

[40]Admin. Rec. at 106, Docket No. 14.

[41]Admin. Rec. at 86, Docket No. 14.

-12-

tive remedies available under the plan....'" Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 627 (9th Cir. 2008) (quoting 29 C.F.R. § 2560.503-1(*l*)). It is within the court's discretion to decide whether any of these exceptions apply. Amato, 618 F.2d at 569.

Plaintiff argues that an appeal of the amount of her benefits award would have been both futile and provided an inadequate remedy. This argument is based on Section 3.03 of the Plan, which provides that

> [a]ny Participant not meeting the requirements specified herein shall not be entitled to any benefits under this Plan and, further neither the Participant nor his Individual Employer shall be entitled to return of any of the contributions made to the Fund or any interest thereon.[42]

Plaintiff argues that since she had not met the requirement to file a disability retirement application prior to January 1, 2010, any appeal to the Trustees would have been futile because the Plan does not provide for exceptions to Section 3.03 in cases of misrepresentation or failure to provide applications to beneficiaries. Plaintiff also argues that because there are no exceptions to Section 3.03, the only way the Trustees could provide the relief she has requested would be to reform the Plan, which the Trustees have no authority to do. Thus, plaintiff argues that an administrative appeal would have been an inadequate remedy.

---

[42]Admin. Rec. at 33, Docket No. 14.

Plaintiff's Section 3.03 argument fails because the remedy that plaintiff seeks would not require that the Trustees reform the Plan. The Trustees have already determined that plaintiff is entitled to retirement disability benefits. If the facts of this case would justify such action, the Trustees could treat plaintiff's application for retirement disability benefits as though it had been filed prior to January 1, 2010 and grant plaintiff the relief she is seeking without having to change, modify, or reform the Plan. Section 3.03 does not in any way limit the Trustees' ability to resolve plaintiff's claim.

But even if an appeal would not have been futile and would have provided her an adequate remedy, plaintiff argues that her failure to exhaust her administrative remedies should still be excused because defendants failed to provide her notice of her right to appeal the amount of her benefits award. ERISA regulations provide that "a fiduciary must give written notice to a plan participant or beneficiary of the 'steps to be taken' to obtain internal review...." Chappel v. Laboratory Corp. of Amer., 232 F.3d 719, 726 (9th Cir. 2000) (quoting 29 C.F.R. § 2560.503-(b)). Because the election form that plaintiff received did not contain any information as to how plaintiff could appeal the amount of her benefits award, plaintiff argues that she should be deemed to have exhausted her administrative remedies as to the amount of her benefits award. See Dishman v. UNUM Life Ins. Co. of Amer., 269 F.3d 974, 984-85

(9th Cir. 2001) (district court did not abuse discretion in excusing the plaintiff's failure to exhaust administrative remedies when UNUM did not give adequate notice of the available appeals procedure); Chappel, 232 F.3d at 726-27 (fiduciary did not fulfill his duties if he failed to advise Chappel of an arbitration clause and its required procedures); White v. Jacobs Engineering Group Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1990)("When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered.").

Defendants concede that "[i]t is undisputed that [plaintiff's] benefit election form did not include notice of the appeal provisions."[43] But, they argue that there was no reason to provide notice of appeal rights with the benefit election form because that form did not constitute a benefit denial. Rather, defendants contend that the election form is mandated by Section 205(c) of ERISA, 29 U.S.C. § 1055(c), and its purpose is to describe the various benefit payment options (i.e., single life annuity, 100% joint and survivor annuity, 50% joint and survivor annuity). Because the election form was not a denial of benefits, defendants insist that there was no requirement to include appeal procedures.

---

[43]Defendant Fund's Reply in Support of the Motion for Summary Judgment [etc.] at 5, Docket No. 35; Defendant Welfare Pension Administration Service, Inc.'s Joinder in Defendant Fund's Reply [etc.], Docket No. 36.

The problem with defendants' argument is that the election form was the only document that plaintiff received that told her what the amount of her benefits would be. As defendants repeatedly emphasize, the Plan provides that a claimant can file an appeal if "[s]he did not receive the full amount of benefits to which [s]he is entitled...."[44] If a claimant can appeal the amount of her benefits award, then it follows that defendants had a fiduciary duty to advise the claimant of that right when it first advised the claimant what the amount of her benefit award would be. It is disingenuous for defendants to insist that plaintiff had to exhaust her administrative remedies as to the amount of her benefits award while at the same time arguing that they did not have to give her notice as to the procedures by which she could do that.

If notice were required, which it was, then defendants argue that their failure to provide notice should be excused because plaintiff had actual notice of the appeal procedures. Defendants point out that plaintiff had used the appeal procedures on a prior occasion and that she had been provided "a copy of the Claims and Appeal Procedures...."[45]

Defendants, however, cite to no authority that stands for the proposition that actual notice, rather than formal notice, is

---

[44]Admin. Rec. at 83, Docket No. 14.

[45]March 14, 2011 letter at 2, Plaintiff's Notice [etc.], Docket No. 34.

-16-

sufficient for purposes of ERISA. Moreover, the actual notice which plaintiff received had to do with the denial of her claim, not the amount of her benefits.

Defendants also suggest that plaintiff knew that disability retirement benefits were being reduced for applications filed after January 1, 2010 and thus she could have raised this issue when she appealed the denial of her claim. Defendants point out that plaintiff has averred that she was told about the reductions in November 2009 and that she knew that she had not filed her application before January 1, 2010.

Plaintiff may have been aware that the new reductions might apply to her when she filed the appeal of the denial of her claim. But, at that point in time, she had not been awarded any benefits. An argument about how her benefits should be calculated would have been irrelevant.

In sum, defendants did not give plaintiff notice as to her right to appeal the amount of her benefits award. "In cases of inadequate notice, the usual remedy is to allow the plaintiff to file a late appeal and to construe it as timely." Chappel, 232 F.3d at 727. Thus, this matter is remanded to the Trustees so that plaintiff can pursue an appeal of her benefits award. The Trustees shall treat plaintiff's appeal as timely, as long as plaintiff's appeal is filed within 180 days of the entry of this order.

## Conclusion

Defendants' motion to dismiss is granted. This matter is remanded to the Trustees for further proceedings. The clerk of court shall enter judgment dismissing plaintiff's complaint without prejudice.

DATED at Anchorage, Alaska, this <u>3rd</u> day of December, 2013.

<u>/s/ H. Russel Holland</u>
United States District Judge